**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

GEORGE P. MITCHELL,

    Plaintiff,

v.                                                                                         CV 10-1206 WPL/GBW

ZIA PARK L.L.C. d/b/a ZIA PARK &
BLACK GOLD CASINO and PENN
NATIONAL GAMING, INC.,

    Defendants.

**ORDER DENYING MOTION TO DISMISS**

    George Mitchell sued Zia Park L.L.C. d/b/a Zia Park & Black Gold Casino (Black Gold Casino) and Penn National Gaming, Inc. for employment discrimination under Title VII and the New Mexico Human Rights Act. (Doc. 1.) Mitchell claims that Black Gold Casino and Penn National Gaming retaliated against him after he objected to the sexual harassment of Shelly Chesser, another Black Gold Casino employee, by Christina Taylor, a supervisor. (Doc. 1 at 3-6.) Penn National Gaming has moved to dismiss Mitchell's Complaint against it. (Doc. 9.) It argues that it is entitled to dismissal under Rule 12(b)(6) because Mitchell has failed to state a claim against it. *Id.* at 1-4. Penn National Gaming also argues that the court lacks subject matter jurisdiction over it and so is entitled to dismissal under Rule 12(b)(1) because Mitchell never asserted an administrative claim against it. *Id.* at 4-5.

    Penn National Gaming's first argument is that Mitchell's Complaint must be dismissed under Rule 12(b)(6) because Mitchell was employed by Black Gold Casino, a subsidiary corporation, and Penn National Gaming cannot be liable for the conduct of employees of Black Gold Casino. Whether a motion to dismiss should be granted depends on whether the complaint contains "enough

1

facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss, the complaint must give the court reason to believe that the plaintiff has a reasonable likelihood of mustering factual support for his claims. *Id*. When considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations in the complaint and must view those allegations in the light most favorable to the plaintiff. *Id.* (citation omitted); *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (citation omitted).

In his Complaint, Mitchell admits that he was employed by Black Gold Casino and that Black Gold Casino is a subsidiary of Penn National Gaming. (Doc. 1 at 1-2, 3.) Mitchell sets forth two separate claims to establish liability on Penn National Gaming. First, he alleges that Penn National Gaming operates Black Gold Casino. He states that Penn National Gaming "is responsible for all policies, procedures and practices relating to employment" at Black Gold Casino and that he was retaliated against because Penn National Gaming failed "to promulgate and enforce policies and procedures designed to proscribe and eliminate retaliation." *Id*. at 1-2. In his Response to the Motion to Dismiss, Mitchell argues that Penn National Gaming is liable for the actions of Black Gold Casino under the integrated enterprise test, and he attaches certain documents to support this claim. (Doc. 14 at 2-3 & Exs. 1-9.) Second, he claims that Christina Taylor, Ahmad Mughni, Richard Martin and Senaida Regalado are employees, agents or borrowed servants of Penn National Gaming and that Penn National Gaming is liable for their actions under the doctrine of *respondeat superior*.[1] (Doc. 1 at 1.)

It is well settled that businesses can incorporate to limit liability and to isolate liabilities

---

[1] Mitchell alternatively alleges that these individuals are employees, agents or borrowed servants of Black Gold Casino. (Doc. 1 at 2.)

among separate companies. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993) (citation omitted). There is "a strong presumption that a parent company is not the employer of its subsidiary's employees . . . ." *Id.* (citation omitted). Courts have struggled with a variety of tests to determine whether, for Title VII purposes, a parent company is the employer of employees of a subsidiary company. *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir. 1998) (discussing the common law agency, "hybrid" common law-economic realities, and integrated enterprise tests); *Frank,* 3 F.3d at 1362, 1362 n. 2 (discussing the integrated enterprise, agency, alter ego and instrumentality tests). While the Tenth Circuit has not adopted an exclusive test for use in all employment discrimination cases, it has applied the integrated enterprise test in several cases. *See, e.g.*, *Lockard,* 162 F.3d at 1069-71; *Frank*, 3 F.3d at 1362-64. Under this test the court considers the following factors: interrelation of operations between the parent and subsidiary companies, centralized control of labor relations, common management, and common ownership or financial control. *Lockard*, 162 F.3d at 1069 (citation omitted). A key factor is whether the parent company has control over the day-to-day employment decisions of the subsidiary. *Id.* at 1070 (citation omitted). It is not necessary to establish all four factors; "the heart of the inquiry is whether there is an absence of an arm's-length relationship among the companies." *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1184 (10th Cir. 1999) (citations omitted).

Although Penn National Gaming recites that the court should take the allegations of Mitchell's complaint as true, it promptly proceeds to disregard this standard and attaches an affidavit to controvert Mitchell's allegation that Taylor, Mughni, Martin and Regalado were employees, agents or borrowed servants of Penn National Gaming. The affidavit of Gail Gonzales, the Human Resources Director for Penn National Gaming, asserts that these individuals never worked for Penn National Gaming and instead were employees of Black Gold Casino. (Doc. 9 at 3 & Ex. 1.) Under

3

Rule 12(b)(6), the court "may properly consider only facts and documents that are part of or incorporated into the complaint . . . ." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (citation omitted); *see also* STEVEN M. BAICKER-MCKEE, WILLIAM M. JANSSEN & JOHN B. CORR, FEDERAL CIVIL RULES HANDBOOK 452-53 (2010). If matters outside the pleadings are submitted, the court must either exclude the material or treat the motion as one for summary judgment under Rule 56. FED. R. CIV. P. 12(d); BAICKER-MCKEE, ET AL.*, supra*, at 453-54. The district court has discretion to convert a motion to dismiss into a motion for summary judgment if the court chooses to consider materials outside the pleadings in making its ruling. *Trans-Spec Truck Serv.,* 524 F.3d at 321 (citations omitted). If the court chooses to ignore the supplementary materials submitted and determine the motion under the Rule 12(b)(6) standard, "no conversion occurs and the supplementary materials do not become part of the record for purposes of the Rule 12(b)(6) motion." *Id*. (citation omitted).

  Penn National Gaming fails to address this issue and instead blithely asks me to rely upon the Gonzales affidavit when granting its motion to dismiss. I will exclude Gonzales' affidavit and the supplementary material submitted by Mitchell and will apply the Rule 12(b)(6) standard. Doing so dictates that Penn National Gaming's first argument in support of its motion to dismiss must be rejected. By stating that Penn National Gaming operates Black Gold Casino and is responsible for its employment policies, procedures and practices, Mitchell has sufficiently alleged that Penn National Gaming is responsible for the actions of Black Gold Casino employees under the integrated enterprise test. Mitchell has also sufficiently alleged that Penn National Gaming is responsible under *respondeat superior* for the actions of Taylor, Mughni, Martin and Regalado.

  Penn National Gaming's second argument in support of its motion to dismiss, that the court does not have subject matter jurisdiction over it because Mitchell did not name it in his EEOC

charge, may be dealt with more summarily. Penn National Gaming is correct that, as a general rule, to bring suit pursuant to Title VII or the New Mexico Human Rights Act, the plaintiff must name the defendant in the administrative charge filed with the EEOC. 42 U.S.C. § 2000e-5(f)(1); *Romero v. Union Pac. R.R.*, 615 F.2d 1303, 1311 (10th Cir. 1980); *Sonntag v. Shaw*, 22 P.3d 1188, 1193 (N.M. 2001). This insures that the defendant had notice of the charge and that the EEOC had an opportunity to attempt conciliation. *Knowlton*, 189 F.3d at 1185 (citation omitted). The omission of a party's name from the EEOC charge does not, however, mandate automatic dismissal from a subsequent suit.[2] When there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge such that the unnamed party had notice and voluntary conciliation could have occurred, the lawsuit may proceed against the defendant not named in the charge. *Id.* (citations omitted). At the motion to dismiss stage I must accept Mitchell's allegation that Penn National Gaming and Black Gold Casino are an integrated enterprise, so Penn National Gaming is not entitled to dismissal because Mitchell did not name it in his administrative charge.

IT IS ORDERED that Penn National Gaming's motion to dismiss is denied.

William P. Lynch
United States Magistrate Judge

---

[2] Courts must examine the following four factors to evaluate the effect of the failure to name a party before the EEOC: "(1) whether the role of the unnamed party could have been ascertained at the time of the filing of the EEOC complaint through reasonable effort by the complainant; (2) whether the interests of a named party are so similar to the unnamed party's that it would be unnecessary to include the unnamed party in the EEOC proceedings for the purpose of obtaining voluntary conciliation and compliance; (3) whether the unnamed party's absence from the EEOC proceedings resulted in actual prejudice; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party." *Knowlton*, 189 F.3d at 1185 n. 9 (citations omitted).

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

5